UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| D.A., b/n/f and individually L.A., | § | |
| | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | CIVIL ACTION NO. H-08-cv-2438 |
| | § | |
| HOUSTON INDEPENDENT SCHOOL | § | |
| DISTRICT, CELESTINA MARTINEZ, | § | |
| and SHARON COLVIN, | § | |
| | § | |
| **Defendants.** | § | |

<u>**MEMORANDUM AND ORDER**</u>

Before the Court is Defendants' Motion for Summary Judgment. (Doc. No. 16.) After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that Defendants' Motion for Summary Judgment should be granted.

**I.     BACKGROUND**

**A. D.A.'s Educational Background**

This case arises out of Defendants' alleged failure to test Plaintiff D.A. for special education services.[1] D.A. first entered Houston Independent School District ("HISD") as a pre-kindergarten student in 2005. (Adm. Hr'g Tr. 26:11-17, April 7, 2008.) He attended Sanchez Elementary School. (*Id.* at 26:21-23.) Not long after D.A. began pre-kindergarten, his teacher, Renisha Freeman, noticed that he was having trouble completing his work and following instructions. (*Id.* at 27:19-24.) Freeman told Plaintiff L.A., D.A.'s mother, that HISD would probably not test D.A. for special education while he was in pre-kindergarten, but that he should be tested in kindergarten or first grade. (*Id.* at 28:9-14.) L.A. tried to help D.A. by completing

---

[1] For the purposes of this Motion only, the facts will be presented in the light most favorable to Plaintiffs.

assignments with him at home that he could not finish in class, like coloring and learning the alphabet. (*Id.* at 29:20-25.)

When he advanced to kindergarten, D.A. was zoned to Crespo Elementary School ("Crespo"). His teacher was Melissa Espinoza. (*Id.* at 35:18-22.) Once in kindergarten, D.A. was still unable to complete his work. Espinoza felt that he did not perform at the level of the other students in the class. (*Id.* at 80:18-21.) L.A. would come to the school and sit with D.A. while he was in class to help him complete assignments. (*Id.* at 36:14-17.) On September 4, 2006, L.A. wrote to Espinoza and requested that D.A. be evaluated for testing, stating that Celestina Martinez, the Crespo principal, had informed L.A. that Espinoza had to consent to D.A. being tested. (Adm. R. at 000152.) On October 4, 2006, L.A. signed a "Consent for Full and Individual Evaluation." (Adm. R. at 000153.)

L.A. attended a meeting with Mr. Butts, a kindergarten teacher who was covering Espinoza's class, Ms. Halpern, the counselor and referral chairperson, and Martinez. Both L.A. and Mr. Butts wanted D.A. to have the full battery of special education testing, but Halpern informed L.A. that D.A. could be tested only for speech therapy. (*Id.* at 44:6-11.) L.A. signed the necessary papers. Shortly thereafter, Espinoza resumed teaching the class. She told Halpern that she did not have any trouble understanding D.A's speech. HISD did not inform L.A. that it had decided not to go through with the testing. (*Id.* at 171:12-22.)

On February 9, 2007, Espinoza sent L.A. a "Notice of Progress" for D.A., in which Espinoza stated that, if D.A. did not experience major improvement, she would recommend that he repeat kindergarten. (R. at 000154.) Espinoza ultimately decided to promote D.A. to first grade, however, because she felt there would be more testing and special education opportunities there. (*Id.* at 92:23-24.) Espinoza believes that there is a district policy preventing a

kindergarten teacher from initiating a special education referral.  (*Id.* at 102:18-22.)  She believes

the only type of referral that can be made is for speech therapy.  (*Id.* at 108:9-11.)  Martinez

similarly confirmed that Crespo has a practice of waiting until the first grade to test for special

education, to give children a chance to develop.  (*Id.* at 166:13-14.)

On the last day of school, D.A. came home with a certificate saying that he had passed

kindergarten and would continue to the first grade.  (*Id.* at 48:12-14.)  L.A. was angry because

Espinoza had told her that she would not send D.A. to the first grade, and L.A. felt that

advancing to the next grade would only hurt D.A. because he was not even on a kindergarten

level.  He could not, at that point, identify his numbers or letters.  (*Id.* at 48:16-25.)

Before D.A. started first grade, L.A. made efforts over the summer to have him

transferred to another school because Crespo had failed to test him for special education during

kindergarten.  (*Id.* at 49:21-25.)  She attempted to transfer him to several different schools, but

they were all overcrowded.  L.A. then enrolled D.A. in Crespo again, where he began first grade

in Doris Fields' classroom.  (*Id.* at 53:17-20.)  Fields has 23 years of teaching experience and has

taught grades one through eight for HISD.  (*Id.* at 278:9-18.)  When D.A. entered first grade,

L.A. first spoke with Sharon Colvin, a counselor, about having him tested for special education.

Colvin gave L.A. some forms to complete, and L.A. filled them out and returned them to the

school.  (*Id.* at 150:16-17.)  On September 10, 2007, L.A. wrote a letter to Martinez requesting,

again, that D.A. be evaluated.  (R. at 000155.)  In the letter, L.A. informed Martinez that D.A.'s

doctor believed D.A. had a learning disability and needed to be evaluated by the school.

From the beginning of first grade, Fields had trouble with D.A.  After a few weeks of

having D.A. in her class, Fields recommended to L.A. that she have D.A. tested for special

education.  (*Id.* at 279:15-20.)  Fields observed that D.A. performed below grade level and that

3

he exhibited "extreme behavior," such as fighting, in her class. (*Id.* at 279:5-11.) D.A. would throw crayons, crawl out of his seat on the floor, and refuse to pay attention in class. At Martinez's suggestion, Field had D.A. sit at a separate desk apart from the other children. D.A. would have outbursts, sing during lessons, and continuously talk. (*Id.* at 281-282.) Fields generally had below average children in her classroom, and D.A. was the lowest performing child in the class. (*Id.* at 283:22-284:4.) D.A. was failing academically, and Fields believed that the first grade was too much for him. (*Id.* at 284-285.)

The dean of instruction at Crespo, Lisa Gonzalez, began to pull D.A. out of class to help him do his work. (*Id.* at 55:6-9.) L.A. describes D.A.'s academic progress at this time as "horrible." He was assigned two digit math problems; however, he was unable to count or identify his numbers past ten. (*Id.* at 55:21-56:17.) D.A.'s report card dated October 19, 2007 indicated that he was failing all of his academic courses. (Adm. R. at 000156.) The school called L.A. three or four times per week about D.A.'s behavior. Finally, Martinez told her not to bring her son back to school unless she came to sit with him. (*Id.* at 59:10-11.) As a result, L.A. would sit with D.A. during the mornings before his class left for lunch. (*Id.* at 60:11-13.) Sometimes she stayed for the entire day. (*Id.* at 61:16-17.) On approximately three occasions, the school dropped D.A. off at home, with L.A.'s elderly mother, without contacting L.A. (*Id.* at 63:6-25.)

Mary Kate Brooks, a speech pathologist, began treating D.A. about once a week when he was in kindergarten. (*Id.* at 119:4-23.) She diagnosed him with a receptive and expressive language disorder as well as an articulation disorder. (*Id.* at 121:14-16.) During her treatment of D.A., Brooks developed the opinion that D.A. had "a lot more going on" than low intellect and language issues, and so she recommended that L.A. contact a psychologist or psychiatrist. (*Id.* at

4

125:3-9.)  On November 7, 2007, after D.A. began first grade, she wrote to the school to express

her concern about D.A.  In her letter, Brooks stated that L.A. had repeatedly asked for psycho-

educational testing since D.A. was in kindergarten.  Brooks also wrote that, on September 27,

2007, she called Crespo and spoke with Sharon Colvin, a counselor, to report L.A.'s concerns

and her own observations of D.A.  Brooks was informed that the school would complete a home

survey, vision and hearing screening, and hold a meeting to discuss any needed assessment that

Friday, but as of the date of Brooks' November letter, no meeting had been held.  Brooks

concluded by admonishing the school that D.A. was "in desperate need of intervention."  (Adm.

R. at 000162.)

At one point, Martinez requested L.A.'s permission to send D.A. to another classroom to

work with a teacher, Ms. Walker, in case he misbehaved in Fields' class.  L.A. signed a consent

form.  (*Id*. at 66:1-8.)  Afterwards, L.A. saw distinct changes in D.A.'s behavior.  He began

hiding in closets and became increasingly violent towards his younger sisters.  One day, D.A.

tried to run away from school after L.A. dropped him off.  He brought home worksheets and

school assignments that were completely blank.  (*Id*. at 69-70.)  D.A. informed L.A. that

someone at school had put him in a closet, and that he was being dragged around the school.  He

also told her that Martinez had called him "a lazy monkey."  (*Id*. at 160:2.)

L.A. then learned that Ms. Walker was a teacher's aide who worked in the special

education class, which was directed by Mr. Edokpayi.  When L.A. spoke to Mr. Edokpayi, he

told her that he was "trained for special education students."  L.A. instructed Martinez not to put

D.A. in Mr. Edokpayi's classroom anymore, and to tear up the consent form she had signed, but

D.A. told her that he was still being sent to Mr. Edokpayi's classroom.  (*Id*. at 71-72.)

The Intervention Assistance Team ("IAT") first met on October 24, 2007 to discuss D.A. (*Id.* at 333:15-16.) The IAT is a committee that meets with teachers to discuss students' academic and behavior problems. The IAT makes recommendations to help teachers solve these difficulties, and it can also refer students for special education testing. (*Id.* at 334:1-18.) The IAT can meet multiple times to discuss a particular student. At the first IAT meeting regarding D.A., Fields states that she brought a notebook full of documentation about D.A.'s academic and behavioral struggles. (*Id.* at 290:4-15.) The IAT, however, felt that Fields had not sufficiently documented his problems in order for it to make a special education referral. (*Id.* at 337:1-2.) The IAT gave Fields an "ABC" form to document D.A.'s behavior.

In December 2007, D.A. began seeing a psychiatrist who prescribed Risperdal and Conserta. (*Id.* at 231:8-21.) The psychiatrist informed L.A. that D.A. had a severe learning disability called Pervasive Developmental Disorder ("PDD"), which is similar to autism. (*Id.* at 236:9-14.) When L.A. told the psychiatrist that she had tried, and failed, to have the school test D.A. for special education, the psychiatrist advised her to write a letter to the Texas Education Agency. (*Id.* at 237:4-11.)

The IAT met to discuss D.A. again on December 5. At this meeting, the IAT once again decided that Fields had not provided sufficient documentation, on the proper forms, for a special education referral. (*Id.* at 337:12-21.) Amy Tomlin, the school's evaluation specialist, informed Fields that she would return to the school on December 7 to pick up the documentation on the proper forms. On December 7, Fields had the form partially completed, and Tomlin submitted it to the Committee of Evaluation Specialists ("CMDT"), which ultimately determines whether a student's behavior warrants a special education referral. (*Id.* at 338-339.) The CMDT requested additional documentation. (*Id.* at 340:4-8.)

On December 8, 2007, L.A. again wrote to the school, requesting that D.A. be tested and stating that D.A. had been put in a closet and tossed around by teachers. (Adm. R. at 000157.) D.A.'s second report card, dated December 20, 2007, also reflected that he was failing all of his academic courses. (Adm. R. at 000158.) On December 21, 2007, L.A. again wrote to Martinez, asking why the school had not evaluated D.A. (Adm. R. at 000159.)

After the CMDT met, Tomlin went to Loretta Zayas-Revai, Crespo's evaluating psychologist, and said that Fields had completed the documentation and that she believed there was enough information to make a referral. (Adm. Hr'g Tr. 341:10-17.) After getting the rest of the documentation from Fields, Tomlin concluded that D.A.'s behavior was "escalating." (*Id.* at 342:12-23.) The IAT met one final time, on December 20, and decided that it would meet again after the holidays and refer D.A. for a special education evaluation. (*Id.* at 381.)

On December 27, L.A. contacted Zayas-Revai about the evaluation, and Zayas-Revai informed her that they would be meeting on January 16 for D.A.'s psychological evaluation. (*Id.* at 384L9-15.) L.A. requested that the school send her a letter about the meeting. On January 14, 2008, the school sent a letter to L.A., asking that she attend a meeting scheduled for January 16, 2008, to discuss D.A.'s academic and behavior intervention plan with Zayas-Revai. (Adm. R. at 000160.) L.A. had another appointment scheduled for the morning of January 16, and she offered to come to the school to sign any necessary consent forms. Martinez, however, told L.A. that she had to be present at the meeting in order to sign the forms. (*Id.* at 157:7-12.) The meeting was scheduled for 9:00 a.m., and Zayas-Revai waited for L.A. until 10:30 a.m. Zayas-Revai then called L.A. and left her a voicemail, telling her that she could not just sign the evaluation forms because they had to be completed as part of the psychological evaluation. (*Id.*

7

at 387:1-15.) Zayas-Revai does not remember if she made any further attempts to contact L.A. after January 16. (*Id*. at 389:8-11.)

On January 31, L.A. officially withdrew D.A. from Crespo. (*Id*. at 158:8-20.) On March 5, D.A. entered Conroe Independent School District as a student at Broadway Elementary School ("Broadway"). (*Id*. at 241:11-12.) After D.A.'s first day at Broadway, his teacher contacted L.A. and recommended that D.A. be tested for special education. The teacher sent L.A. the requisite paperwork the next day, and at the time of the administrative hearing, Broadway was in the process of performing psychological evaluations on D.A. (*Id*. at 241-243.)

### B. The Administrative Hearing

On April 7-8, 2008, the Texas Education Agency held a due process hearing to discuss Plaintiffs' Individuals with Disabilities Education Act ("IDEA") claim, and the Hearing Officer subsequently issued a written opinion. (Pl. Compl. Ex. B.) At the hearing, Plaintiffs requested that HISD conduct an FIE to assess D.A. in all areas of suspected disability, including autism, other health impairment, speech impairment, and learning disabilities in order to determine his eligibility under IDEA for special education services. Plaintiffs also requested that HISD convene an Admission, Review, & Dismissal Committee ("ARD") meeting to design an Individual Education Plan ("IEP") for D.A. based on the results of the FIE. Finally, Plaintiffs requested compensatory relief for failure to identify D.A. and failure to provide appropriate special education services, including out of pocket expenses incurred by L.A., moving expenses, attorney's fees, medical expenses, expenses arising from D.A's psychiatric treatment, and unspecified monetary damages as compensatory relief for failure to timely identify D.A. and failure to provide special education services.

After listening to testimony from several witnesses and arguments from both Plaintiffs' and Defendants' counsel, the Hearing Officer concluded that HISD violated the IDEA by failing to timely initiate a referral and conduct an initial evaluation for special education eligibility and services. (Pl. Compl., Ex. B.) Specifically, the Hearing Officer found that the IAT should have initiated D.A.'s referral for special education when Fields presented her concerns at the IAT meeting on October 24, 2007. The Hearing Officer also found that HISD should have provided L.A. with a written notice of its decision to delay a special education evaluation in order to complete the IAT process. The Hearing Officer further held that HISD teachers made "a series of erroneous representations" to L.A. that D.A. could not be tested for special education while in pre-kindergarten and kindergarten.

Despite her findings that HISD had indeed violated the IDEA by failing to timely evaluate D.A., the Hearing Officer ultimately concluded that HISD no longer had a responsibility to conduct FIE because D.A. had moved outside of HISD's jurisdictional boundaries and was enrolled in Conroe I.S.D., where a FIE was already underway. Plaintiffs' request for a FIE was therefore moot. As to damages, the Hearing Officer held that Plaintiffs' request for monetary damages, including moving costs, was not an appropriate form of relief under IDEA. While the Hearing Officer allowed that medical expenses could be awarded under IDEA, she found that Plaintiffs had failed to prove by a preponderance of evidence the amount of medical expenses allegedly incurred by Plaintiffs as a result of HISD's refusal to evaluate D.A. Finally, the Hearing Officer held that she did not have jurisdiction to award attorney's fees.

Plaintiffs filed suit, requesting declaratory relief. Plaintiffs allege that Defendants violated the IDEA, section 504 of the Vocational Rehabilitation Act, Title II of the Americans with Disabilities Act ("ADA"), the Age Discrimination Act of 1975, and 42 U.S.C. § 1983, as

well as Plaintiffs' constitutional right to due process. Plaintiffs also seek an award rewarding L.A. for her costs providing supplementary instruction and treatment, an award of compensatory damages for harm suffered by Plaintiffs, punitive damages, and attorney's fees. Defendants have moved for summary judgment. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II.   ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. F.R.C.P. 56(e)(1); *See, e.g.*, *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996), *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### B. Plaintiffs' Claims Against Colvin and Martinez

In their Complaint, Plaintiffs do not specify whether they are suing Colvin and Martinez in their individual or official capacities.  Defendants argue that Plaintiffs cannot properly sue Martinez and Colvin in their individual capacities for violations of IDEA, Section 504, the ADA or the Age Discrimination Act.  The Court agrees.  It is well-established that these statutes are meant to prevent discrimination by public agencies, not officials acting in their individual capacities.  *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999) (holding that government officials cannot be sued in their individual capacities under Section 504); *Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that individual defendants are not personally liable for discrimination under Section 504 or Title II of the ADA); *Bradley v. Arkansas Dep't of Education*, 301 F.3d 952, 957, n.5 (8th Cir. 2002) (suggesting that IDEA does not provide a basis for individual liability).  Further, because the Age Discrimination Act's language is so similar to that of Section 504, the Court agrees with Defendants that *Lollar*'s reasoning bars individual liability for Defendants under the Age Discrimination Act.

### C.  IDEA Claims

#### 1.  Defendants' Failure to Evaluate D.A.

##### a)  Mootness

Although the Hearing Officer found that Defendants had violated IDEA by failing to evaluate D.A. after the October 24 IAT meeting, she did not award Plaintiffs any relief, holding instead that their claims were moot because D.A. was already enrolled in another school district where an evaluation was underway.  Defendants urge the Court to affirm this finding; Plaintiffs argue that their claim is not moot because they sought compensatory damages.  In reply, Defendants contend that Plaintiffs failed to exhaust their claim for compensatory relief by not advancing it at the administrative hearing.

Defendants claim that, since D.A. is no longer a student in HISD, the Hearing Officer properly found that Plaintiffs' claim regarding Defendants' failure to conduct an evaluation and was moot. "Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Continental Banks Corp.*, 494 U.S. 472, 477 (1990). "This case or controversy requirement subsists through all stages of federal judicial proceedings ...." *Id.* Ordinarily, an action that becomes moot must be dismissed for lack of subject matter jurisdiction. *Id.*

IDEA's "Child Find" provisions require states to implement policies and procedures to ensure that all children with disabilities residing in the state, including homeless children, children who are wards of the State, and children in private schools, are identified, located, and evaluated. 34 C.F.R. § 300.11(a)(i). Under Texas law, however, school districts are only responsible for Child Find activities with respect to (1) students eligible under state law to attend school in the school district and (2) students attending private schools located within the jurisdiction of the district. TEX. EDUC. CODE § 25.001(b). Because D.A. no longer resides within its boundaries, the Hearing Officer found that HISD is not legally responsible for evaluating his special education needs. Defendants cite several cases in which circuits deemed a plaintiff's claim for declaratory or injunctive relief moot because the student had graduated or moved out of the school district. *See Pace v. Bogalusa City Sch. Bd.*, 325 F.3d 609, 622 n. 20 (5th Cir. 2003), *rev'd in part en banc*, 403 F.3d 272 (5th Cir. 2005); *Moseley v. Bd. of Educ. Of Albuquerque Pub. Schs.*, 483 F.3d 689, 692-93 (10th Cir. 2007); *Brown v. Bartholomew Consolidated Sch. Corp.*, 442 F.3d 588, 600 (7th Cir. 2006).

Plaintiffs argue that these cases are distinguishable because the plaintiffs did not seek compensatory damages from the district courts. Courts have held that "[t]he presence of an

12

actionable claim for compensatory education will insulate an IDEA case against a mootness challenge even after the child's eligibility for special education services ends." *Smith v. James C. Hormel School of the Virginia Institute of Autism*, No. 3:08-cv-00030, 2009 WL 1081079, at *6 (W.D.Va. April 22, 2009) (quoting *Me. Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R.*, 321 F.3d 9, 17 (1st Cir. 2003)); *Garcia v. Board of Education of Albuquerque Public Schools*, 520 F.3d 1116, 1124 n.3 (10th Cir. 2008) (citing *Schaffer v. Weast*, 546 U.S. 49, 55 (2005)). IDEA authorizes district courts to award aggrieved parties "such relief as the court determines appropriate." 20 U.S.C. § 1451(h)(2)(B). Following the Supreme Court's decision in *School Committee of Burlington v. Department of Education*, 471 U.S. 359, 370-371 (1985), in which the court found that tuition reimbursement was an appropriate remedy under the Education for All Handicapped Children Act ("EAHCA"), IDEA's predecessor, federal courts began awarding compensatory education. *See G. v. Fort Bragg Dependent Schools*, 343 F.3d 295, 308-309 (4th Cir. 2003) (collecting cases); *see also Houston Indep. Sch. Dist. v. V.P.*, 566 F.3d 459 (5th Cir. 2009) (reimbursing parents for private school placement). Compensatory education imposes liability on the school district to pay for services it was required to provide all along, but for whatever reason, improperly refused to do so. *Miener v. Missouri*, 800 F.2d 749, 753 (8th Cir. 1986). "Compensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide [an IEP] to a student." *G. v. Fort Bragg Dependent Schools*, 343 F.3d at 309. "Relief in the form of reimbursement for out-of-pocket educational expenses, or 'compensatory education' ... [is] indeed exceptional and nowhere expressly authorized by the statute.'" *Bartholomew*, 442 F.3d at 597 (citing *Bd. Educ. Oak Park & River Forest High Sch. Dist. 200 v. Todd A.*, 79 F.3d 654, 657 (7th Cir. 1996)).

Plaintiffs seek "an award reimbursing [L.A.] for her costs in providing supplementary instruction and treatment." (Pl. Compl. ¶ 49(e).) Plaintiffs rely on *Oliver v. Dallas Indep. Sch. Distr.*, No. Civ.A. 3:01-CV-2627N, 2003 WL 22272304, at *1-2 (N.D.Tex. Sept. 29, 3003) and *Neshaminy Sch. Distr. v. Karla B.*, No. 96-3865, 1997 WL 137197, at *18-19 (E.D.Pa. March 20, 1997), in which district courts initially found that the plaintiff's IDEA claim was not moot because of its claim for compensatory education. Defendants, in their reply, point out that both of these courts later found, upon further briefing, that the plaintiffs had failed to exhaust their claim for compensatory education at the administrative hearing and therefore their claim was moot. *See Oliver v. Dallas Indep. Sch. Dist.*, No. 3:01-cv-2627, 2004 WL 1800878 (N.D.Tex. Aug. 11. 2004); *Neshaminy Sch. Dist. v. Karla B.*, No. 96-3865, 1997 WL 563421 (E.D.Pa. Sept. 3, 1997). Defendants argue that, in the instant case, Plaintiffs did not specifically request compensatory educational services in the administrative hearing; therefore, their failure to identify claim is moot.

A complaint based on IDEA is not a justiciable controversy until the plaintiff has exhausted her administrative remedies under IDEA or proved that exhaustion would be futile or inadequate. 20 U.S.C. § 1415(l); *Gardner v. Sch. Bd. Caddo Parish*, 958 F.2d 108, 112 (5th Cir. 1992). The plaintiff bears the burden of demonstrating the futility or inadequacy of administrative review. *Gardner*, 958 F.2d at 112 (citing *Honig v. Doe*, 484 U.S. 305, 327 (1988)). "The IDEA's exhaustion requirement serves a number of policy objectives: it allows deference to agency expertise in resolving educational matters; it gives the agency a first opportunity to correct errors; it presents courts with a more fully developed record; and it prevents parties from deliberately disregarding the statute's comprehensive procedures and

14

remedies." *Marc V. v. North East Indep. Sch. Dist., et al.*, 455 F.Supp.2d 577, 592 (W.D.Tex. 2006) (citing *Charlie F. v. Bd. of Educ.*, 98 F.3d 989, 992-993 (7th Cir. 1996)).

The Hearing Officer's First Interim Order states that Plaintiffs requested, among other things, "compensatory relief for failure to identify D.A. and failure to provide appropriate special education services, in the form of out of pocket expenses incurred by L.A. including moving expenses, attorney's fees, medical expenses (specifically, for those expenses arising from care and treatment provided by D.A.'s psychiatrist Dr. Jensen)" and "unspecified monetary damages as compensatory relief for failure to timely identify D.A. and failure to provide special educational services."   (Adm. R. at 00046.)   In her Final Decision, the Hearing Officer adjudicated Plaintiffs' request for compensatory relief in the form of "medical and moving expenses" and "an unspecified amount of money damages as compensatory relief for the school district's failure to timely evaluate and identify [D.A.] as a student in need of special education services." (Pls. Compl. Ex. B.)  The Hearing Officer found that Plaintiffs failed to present any evidence whatsoever of the cost or scope of the medical expenses and that moving expenses are not an appropriate form of relief under IDEA.[2]  The Hearing Officer construed Plaintiffs' request for "an unspecified amount of money damages" to be a tort-like award that is unavailable under IDEA.

Plaintiffs' pleading for compensatory damage appears to be limited to moving expenses and medical costs, which the Hearing Officer addressed and are ripe for review.  To the extent Plaintiffs' claim for "unspecified money damages" included a reimbursement for L.A.'s efforts to supplement D.A.'s education, these claims would also be ripe for this Court's review.[3]  While

---

[2] The Hearing Officer did not address Plaintiffs' claims for attorney's fees under IDEA, which the Court will discuss *infra*.

[3] The Court agrees with the Hearing Officer's finding that "tort-like damages" are not within the scope of relief available under IDEA; therefore, to the extent Plaintiffs seek damages beyond compensation for out-of-pocket

Plaintiffs' pleading for "unspecified" compensatory money damages before the administrative hearing was vague, Plaintiffs did specify that these damages were intended to rectify the school district's failure to timely evaluate and identify D.A. for special education. Defendants cite no authority for the proposition that Plaintiffs must specifically plead relief in the form of "compensatory education services" instead of compensatory damages for the school's failure to comply with Child Find. Further, the type of relief Plaintiffs seek is the same as that awarded in the compensatory education cases because they seek to have Defendants remedy past harms rather than provide prospective relief. *See Neshaminy Sch. Dist.*, 1997 WL 137197 at *18-19. The Court therefore finds that Plaintiffs have sought compensatory education damages in both the administrative hearing and in this Court. The Hearing Officer erred in determining that Plaintiffs' failure to identify claim was moot, and the Court will consider its merits. The Court, however, ultimately finds that Plaintiffs did not submit sufficient evidence at either the administrative hearing, or in this Court, to support an award of compensatory education.

### b) Whether Defendants Violated Child Find

When reviewing a hearing officer's decision under the IDEA program, a district court must receive the records of the administrative proceedings and must take additional evidence at the request of any party. *Houston Indep. Sch. Dist. v. VP*, 566 F.3d at 465. "The court must then give 'due weight' to the hearing officer's findings and make a de novo determination based on a preponderance of the evidence." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d at 289 (citing *Teague Indep. Sch. Dist. v. Todd L*, 999 F.2d 127, 131 (5th Cir. 1993)). "Although the district court must accord 'due weight' to the hearing officer's findings, the court must ultimately reach an

---

educational expenses, their request for relief is denied. *See Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 31 (1st Cir. 2006).

independent decision based on a preponderance of the evidence." *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir.1997) (citations omitted).

The Hearing Officer found that Defendants failed to initiate a referral and conduct an initial evaluation for special education eligibility and services of D.A. in a timely manner during the 2008 school year. (Pls. Compl., Ex. B.)  Specifically, the Hearing Officer found that HISD had enough information in October 2007 to proceed with a special education referral, but the school did not initiate the process until December 2007.  The Hearing Officer further found that HISD should have provided L.A. with written notice of its decision to delay a special education evaluation in order to allow HISD to complete the IAT process first.  Defendants do not now challenge that decision; rather, they argue that school boards should be allowed some flexibility in complying with IDEA.  Plaintiffs argue that the determination of an "unreasonable delay" is a fact issue that should be established by expert testimony and ultimately decided by the trier of fact.  In the alternative, Plaintiffs urge the Court to uphold the Hearing Officer's decision that HISD unreasonably delayed D.A.'s evaluation.

Based on its own review of the record, the Court finds that the Hearing Officer was correct in determining that HISD should have initiated D.A.'s special education referral in October 2007 rather than delaying the process for two more months.  As the Hearing Officer pointed out, the IAT should have initiated the special education referral in October, when D.A.'s first grade teacher, who had 23 years of teaching experience, brought her concerns to the committee.  As of October 2007, all of D.A.'s teachers, from pre-K to first grade, had expressed concern about his developmental delays and behavior problems.  His mother had expressed her concern to the Crespo administration on numerous occasions, and his speech therapist had both called and written to the school to recommend that he be evaluated.  The IAT, however, failed to

consider this evidence in October, either because it had not collected accurate information about his academic progress, such as his failing first grade report card, or because it refused to allow Fields to present her observations because they were not documented on the proper forms.  As the Hearing Officer concluded, the lack of communication within HISD, and between HISD and L.A., led to an unnecessary delay in D.A.'s special education referral.

While Plaintiff argues that the issue of delay should be left to the factfinder, Plaintiffs do not suggest any reason that the Hearing Officer's determination of this fact was in error or offer a basis for re-litigating the finding.  Further, while Defendants argue that school districts should be given flexibility in implementing IDEA's provisions, the Court agrees with the Hearing Officer that the IAT's pre-referral interventions do not excuse Child Find violations.  *Jamie S. v. Milwaukee Pub. Schs.*, 519 F.Supp.2d 870, 898 (E.D.Wis. 2007).

### c)  Compensatory Education

Even though the Court is willing to hold that Plaintiffs exhausted their claim for compensatory relief at the administrative level, and affirm the Hearing Officer's holding that HISD breached its Child Find duties, it agrees with the Hearing Officer that Plaintiffs have not submitted any evidence supporting their claims for compensatory relief.   Plaintiffs argue that the Fifth Circuit requires district courts to consider additional evidence.  They note that the Hearing Officer limited the initial hearing to the issue of whether Defendants failed to timely identify D.A. for special education.  (Tr., vol. I, 63.)  On this basis, Plaintiffs urge the Court to accept additional evidence.  Plaintiffs further argue that the Fifth Circuit "has refused to adopt a rigid rule precluding evidence by adopting the *Town of Burlington* standard that defines the term 'additional evidence' in the ordinary sense of the word, to mean 'supplemental.'"  (Pls. Resp. at 9.)

The IDEA statute mandates that the district court shall hear additional evidence at the request of a party. 20 U.S.C. § 1415(i)(2)(C). "Although the statute states that the [c]ourt shall hear additional evidence at the request of the parties, several circuits have held that limits exist to the extent of additional evidence that a party may submit to the reviewing court under this 'additional evidence' provision." *Marc V. v. North East Indep. Sch. Dist.*, 455 F.Supp.2d at 597. In *Town of Burlington v. Dept. of Educ. for Commonwealth of Massachusetts*, the First Circuit construed the word "additional" in the statute to mean "supplemental." 736 F.2d 773, 790 (1st Cir. 1984). "Thus construed, this clause does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony; this would be entirely inconsistent with the usual meaning of 'additional.'" *Id.* The First Circuit listed reasons that justify supplementation of the record with additional evidence: "gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Id.*

The Fifth Circuit has yet to consider IDEA's additional evidence language; however, our sister courts have followed the majority of circuits by applying the *Town of Burlington* standard to determine what constitutes permissible "additional evidence." *See S.H. v. Plano Indep. Sch. Dist.*, No. 08-cv-96, 2009 WL 500180 (E.D.Tex. Feb. 27, 2009); *Marc V.*, 455 F.Supp.2d at 588 (citing cases from other circuits adopting the *Town of Burlington* standard); *Burks v. Bogalusa City Sch. Bd.*, No. 98-cv-1333, 1999 WL 627398 (E.D.La. Aug. 13, 1999). The general consensus is that IDEA's additional evidence provision is limited, and the decision of whether to allow additional evidence is within the discretion of the district court. *Marc V.*, 455 F.Supp.2d at 588. This authority is necessary to protect the role of the administrative hearing as the primary

forum in which to resolve disputes regarding IEPs—to avoid turning the administrative hearing into a "mere dress rehearsal" followed by an "unrestricted trial de novo" in the district court. *Schaffer v. Weast*, 554 F.3d 470, 476 (4th Cir. 2009) (internal quotations and citations omitted). If parties could always introduce additional evidence in the district court to patch up holes in their administrative case, administrative proceedings would not longer receive due weight. *Id.* (internal quotations and citations omitted). Courts should limit or disallow testimony for all who did, or could have testified before the administrative hearing. *Marc V.*, 455 F.Supp.2d at 598 (citing *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 987 (1st. Cir. 1990)). "In the absence of special circumstances, courts should ordinarily exercise [their] discretion in favor of excluding the belatedly offered evidence." *Id.*

At the administrative hearing, and in their briefing for this Court, Plaintiffs failed to offer evidence supporting their claim for compensatory relief. While Plaintiffs, citing the hearing transcript, argued that the Hearing Officer did not allow such evidence and limited the scope of the hearing to Defendants' liability, this Court has reviewed the portions of the record Plaintiffs cite and did not find any statements from the Hearing Officer limiting testimony on damages. Further, HISD pointed out the lack of evidence supporting Plaintiffs' claim for medical reimbursement in its closing argument. (Tr., vol. II, 440:19-25.) In the Hearing Officer's First Interim Order, she did rule that Plaintiffs could not conduct a school wide investigation to determine if Crespo was violating the rights of other special education students, but she said nothing about D.A.'s individual request for damages. (Adm. R. at 000045.) Evidence of Plaintiffs' medical expenses, which would include bills and records from D.A.'s psychiatrist, was surely available to Plaintiffs before the administrative hearing and at the time they responded to Defendants' Motion for Summary Judgment. The only other compensatory relief

Plaintiffs specifically sought at the administrative hearing was moving expenses; the Court agrees with the Hearing Officer that these expenses are related to a "non-educational" injury and therefore are not recoverable under IDEA. *See Blanchard v. Morton Sch. Dist.*, 420 F.3d 918, 921 (9th Cir. 2005). Plaintiffs did not present any evidence of moving expenses to the Hearing Officer or this Court.

There are other possible claims that Plaintiffs could have made for compensatory relief, such as the costs of the supplemental materials L.A. purchased and D.A.'s speech therapy. Plaintiffs did not, however, specifically include these costs in their claim for relief at the administrative hearing or provide any evidence of these costs to either the Hearing Officer or this Court. Plaintiffs would have had evidence of these expenses both at the administrative hearing and at the time they responded to Defendants' Motion for Summary Judgment. The Court will not, therefore, allow Plaintiffs to submit any additional evidence of these damages.

### 2.  Plaintiffs' Remaining IDEA Claims

Defendants argue that Plaintiffs' claims that Defendants violated IDEA by failing to provide proper training and supervision to HISD staff and by failing to notify L.A. of its decision to refuse a special education evaluation should be dismissed because Plaintiffs did not exhaust these claims at the administrative hearing. In response, Plaintiffs argue that they exhausted their administrative remedies under IDEA by participating in the administrative hearing. Plaintiffs further argue that the additional claims should not be barred because the Hearing Officer deemed Plaintiffs' failure to evaluate claim moot. Plaintiffs conclude that it would therefore be futile to force them to submit to another due process hearing, and that this Court should allow them to supplement the record with evidence to support their additional IDEA claims. After reviewing the record, Court agrees with Defendants that Plaintiffs simply

did not raise these claims during the administrative hearing.  Because Plaintiffs failed to exhaust these claims, the Court cannot entertain them.  *Gardner*, 958 F.2d at 111.

### 3.  Attorney's Fees for IDEA Claims

Defendants argue that Plaintiffs are not entitled to attorney's fees under IDEA because they are not the "prevailing party."  IDEA permits an aware of attorney's fees to a "prevailing party." 34 C.F.R. § 300.517.  A "prevailing party" is one that attains a remedy that both (1) alters the legal relationship between the school district and the parent and (2) fosters the purposes of the IDEA.  *Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998). Defendants argue that, although the Hearing Officer found that HISD failed to timely refer D.A. for a special education evaluation, the Hearing Officer properly denied Plaintiffs' requested relief.  As a result, Defendants conclude that Plaintiffs is not entitled to attorney's fees. Plaintiffs do not directly address this issue in their Response.  Because the Hearing Officer did not ultimately provide Plaintiffs any relief based on a lack of evidence, the Court will not award attorney's fees.

### D.  Plaintiffs' Non-IDEA Claims

#### 1.  ADA and Section 504 Claims

Defendants also urge the Court to dispose of Plaintiffs' non-IDEA claims, including their claims brought pursuant to the ADA and Section 504 of the Rehabilitation Act.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (citing 42 U.S.C. § 12132).  "A disabled plaintiff can succeed in an action under Title II if he can show that, by reason of his disability, he was either "excluded from

participation in or denied the benefits of the services, programs, or activities of a public entity"
or was otherwise "subjected to discrimination by any such entity." *Id.*

Section 504 of the Rehabilitation Act prohibits any federally funded program from
discriminating against persons with disabilities. Specifically, it provides that "[n]o otherwise
qualified individual with a disability ... shall, solely by reason of her or his disability, be
excluded from the participation in, be denied the benefits of, or be subjected to discrimination
under any program or activity receiving federal financial assistance ..." 29 U.S.C. § 794(a). To
establish a violation of § 504, the plaintiff must establish that: (1) [the student] has a disability;
(2) [the student] is "otherwise qualified" to participate in school activities; (3) [the school]
receives federal financial assistance; and (4) [the student] was excluded from participation in,
denied the benefits of, or subject to discrimination at school. *Hills v. Lamar County Sch. Dist., et
al.*, No. 2:06-cv-53KS-MTP, 2008 WL 427775, at *4 (S.D.Miss. Feb. 13, 2008) (citing *W.B. v.
Matula*, 67 F.3d 484, 492 (3rd Cir.1995), *overruled in part by A. W. v. Jersey City Public
Schools*, 486 F.3d 791 (3rd Cir. 2007)).

### a) Issue Preclusion

Defendants first argue that Plaintiffs' ADA and Section 504 claims are barred by claim
preclusion. Defendants rely on the Fifth Circuit's reasoning in *Pace v. Bogalusa City Sch. Bd.*,
403 F.3d 272 (5th Cir. 2005). In that case, the district court bifurcated the plaintiff's IDEA
claims and resolved them in favor of the school district before hearing the plaintiff's ADA and
Section 504 claims. When the district court turned to the plaintiff's non-IDEA claims, it held
that they were barred by claim preclusion. The Fifth Circuit upheld the district court, holding
that "when an administrative decision is upheld on judicial review under IDEA, principles of
issue and claim preclusion may properly be applied to short-circuit redundant claims under other

laws." *Pace*, 325 F.3d at 621 (quoting *Indep. Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 562 (8th

Cir. 1996)).  Sitting *en banc*, the Court of Appeals refined the panel's holding, noting that a

district court's rehearing of an issue "is not precluded unless the facts and the legal standard used

to assess them are the same in both proceedings." *Pace*, 403 F.3d at 290.  The Fifth Circuit

analyzed the requirements of accessibility of IDEA, Section 504 and the ADA and found them to

be identical.  It concluded that the plaintiff's claims were precluded because the school district

did not owe him any greater or different obligation under the ADA or Section 504 than he was

entitled under IDEA.  *Id.* at 293.  Defendants argue that the duty to evaluate children under Child

Find and the obligation to provide a reasonable accommodation are sufficiently similar to

preclude Plaintiffs' ADA and Section 504 claims.  Because the Hearing Officer found Plaintiffs'

IDEA claims to be moot, Defendants urge that Plaintiffs' ADA and Section 504 claims should be

deemed moot.

Plaintiffs respond that this case is distinguishable from *Pace* because the Hearing Officer

resolved the merits of the failure to evaluate claim in favor of Plaintiffs.  While the Fifth Circuit

did not speak to how this would affect its analysis under *Pace*, other district courts have applied

*Pace*'s reasoning when the Hearing Officer found in favor of the school district.  *See Marc V v.

North East Indp. Sch. Dist.*, 455 F.Supp.2d at 597.

The Court agrees with Plaintiffs that *Pace*'s reasoning does not apply here.  The Hearing

Officer found Plaintiffs' failure to evaluate claim moot because they had no remedy under the

statute.  It is possible that Plaintiffs could seek other damages under the ADA and Section 504 to

redress the school district's alleged violations or the reasonable accommodation requirements.

The Court will not grant summary judgment on the grounds that Plaintiffs' ADA and Section

504 claims are barred by claim preclusion.

### b) Evidence of Bad Faith

Defendants argue, in the alternative, that Plaintiffs' ADA and Section 504 claims should be dismissed on the grounds that Plaintiffs have not demonstrated that these violations were motivated by bad faith. This argument is premised on the Eighth Circuit's holding in *Monahan v. State of Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982) *cert. denied*, 460 U.S. 1012 (1983). In that case, the Eighth Circuit discussed the standard of proof in the EAHCA and Section 504. The Court compared the scope of the two:

> The Rehabilitation Act, on the other hand, is both broader and narrower than EAHCA. It is broader in the sense that it applies to a wide range of federally funded activities, not just to education. It is narrower in that it is not, generally speaking, an affirmative-action statute. "(N)either the language, purpose, nor history of section 504 reveals an intent to impose an affirmative-action obligation on all recipients of federal funds." *Southeastern Community College v. Davis*, 442 U.S. 397, 411 (1979). Section 504, instead, is simply a prohibition on certain conduct on the part of recipients of federal financial assistance.

*Monahan*, 687 F.2d at 1170. The Eighth Circuit concluded that the reference in the Rehabilitation Act to "discrimination" requires "something more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist." *Id.* It reasoned that, because experts could disagree on the special needs of handicapped children, a court's conclusion that an incorrect evaluation has been made is not necessarily the same thing as a holding that a handicapped child has been discriminated against solely by reason of his or handicap. Instead, the Eighth Circuit held that "either bad faith or gross misjudgment" should be shown before a Section 504 violation can be made out ... at least in the context of education of handicapped children." *Id.* at 1171. "So long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals, we cannot believe that Congress intended to create liability under Section 504." *Id.* at 1171.

The Fifth Circuit has not adopted the standard of proof required by *Monahan*, but it has applied it in cases where, like here, the parties explicitly predicated their arguments on it and no party argued that it was the wrong standard. *See K.U. v. Alvin Indp. Sch. Dist.*, 166 F.3d 341, *3 (5th Cir. 1998) (not designated for publication).  Other circuits have adopted the reasoning from *Monahan. See Campbell v. Board of Education of the Center-Line School Dist.*, 58 Fed.Appx. 162 (6th Cir. 2003); *Sellers v. School Bd. of City of Mannassas, Va.*, 141 F.3d 524 (4th Cir. 1998); *Lunceford v. District of Columbia Bd. of Educ.*, 745 F.2d 1577, 1580 (D.C.Cir. 1984); *Timms v. Metropolitan School Dist. of Wabash County, Ind.*, 722 F.2d 1310, 1317 (7th Cir. 1983); *see also Smith v. Special School Dist. No. 1 (Minneapolis)*, 184 F.3d 764, 769 (8th Cir. 1999) (extending the *Monahan* standard to ADA claims).  Other district courts in the Fifth Circuit have as well. *See Ron J. v. McKinney Independent School District*, No. 4:05-cv-257, 2006 WL 2927446 (E.D.Tex. Oct. 11 2006).    Plaintiffs argue that they have met the standard required by *Monahan*, arguing that the testimony at the administrative hearing demonstrated bad faith.  Plaintiffs also argue that they pled that Defendants "did not act in good faith and acted with gross misjudgment in their misconduct." (Pls. Resp. at 15.)

With respect to the pleadings, Plaintiffs' claim for relief under Section 504 claimed that Defendants denied D.A. full and equal access to the public education programs and activities offered within the school district when such access could have been achieved with reasonable accommodation.  (Pls. Compl. at 32.)  Plaintiffs did not allege that the school board or officials committed these acts with bad faith or gross misjudgment.  As to Plaintiffs' ADA claim, they did plead that Defendants' discriminated against D.A. "knowingly and intentionally."  (Pls. Compl. ¶ 36.)  Plaintiffs do not specify, either in their Complaint or their Response, which acts support their claim of bad faith and gross misconduct.

26

Construing the facts in the light most favorable to Plaintiffs, the Court does not find any fact issue as to whether Defendants "depart[ed] grossly from accepted standards among educational professionals." In *Sellers*, the plaintiffs argued that the student's failing test scores should have alerted the school district of his disability. 141 F.3d at 529. In the context of a motion to dismiss, the Fourth Circuit rejected this argument, however, saying that, at best, the plaintiffs had a negligence claim. "In similar cases involving allegations of a school district's failure to timely assess and diagnose a child's disability, courts have been reluctant to find in mis-diagnoses the evidence of bad faith or gross misjudgment sufficient to support a discrimination claim under section 504." *Id.* (internal quotation marks and citations omitted). In the instant case, Defendants erred by delaying D.A.'s evaluation for a two month period because they believed that classroom interventions would be effective and that Fields had improperly documented his behavior. While this negligence violated HISD's Child Find duties, it does not constitute discrimination against D.A. solely on the basis of his disability.

## 2. Age Discrimination Act Claims

Next, Defendants contend that the Court lacks jurisdiction over Plaintiffs' Age Discrimination Act claim because Plaintiffs failed to exhaust their administrative remedies. Under the Age Discrimination Act, in order for a district court to have jurisdiction over a civil action filed by a plaintiff to enforce rights created by that statute, the plaintiff must have exhausted available administrative remedies. *Parker v. Board of Supervisors University of Louisiana-Lafayette*, 270 Fed.Appx. 314, 2008 WL 724600, at * 317 (5th Cir. 2008) (not designated for publication) (citing 42 U.S.C. § 6104(f); 34 C.F.R. § 110.39). The Fifth Circuit has summarized the exhaustion requirements as follows: (1) the plaintiff must have filed an age discrimination complaint with OCR; (2) either 180 days must have elapsed with no finding, or

OCR must have issued a finding in favor of the defendants; (3) OCR subsequently must have notified the plaintiff of her rights to file suit in federal court for injunctive relief; and (4) the plaintiff must have been given the proper notice by registered mail. *Id.* at 317.

Defendants contend that Plaintiffs did not fulfill any of the exhaustion requirements. Plaintiffs respond that exhaustion would have been futile. They contend that they did not become aware that age was one of the motivating factors in HISD's disregard of D.A.'s needs until the administrative hearing. The administrative hearing ended on April 7, 2008, and the Hearing Officer issued her decision on May 9, 2008. IDEA requires that a civil action be filed 90 days from the date of the decision of the Hearing Officer. 20 U.S.C.S. § 1415. Plaintiffs contend that they were therefore required to file a civil action under IDEA before they could exhaust their Age Discrimination Act claims. Finally, Plaintiffs' Age Discrimination Act claims arise out of the same transaction and would be required, as a matter of law and equity, and by the Office of Civil Rights, to be brought in the pending lawsuit.

The Court agrees with Defendants, however, that Plaintiffs are not excused from the exhaustion requirement because counsel did not become aware of the Age Discrimination Act claims until the administrative hearing. As Defendants point out in their Reply, L.A. testified that, two years before the hearing, D.A.'s pre-kindergarten teacher told her that HISD probably would not test D.A. because of his young age. (Tr., vol. II, 28:9-21.) Plaintiffs could have initiated the administrative requirements for their Age Discrimination Act claim well before the filing deadline for the IDEA suit.

### 3. Section 1983 Claims

#### a) Statutory Violation Claims

Section 1983 provides injured plaintiffs with a cause of action when they have been deprived of federal rights under color of state law. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). The statute reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. In order to state a cause of action under § 1983, a plaintiff must (1) allege a violation of rights secured by the constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person [or entity] acting under color of state law. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d at 215.

Defendants argue that, assuming Plaintiffs have alleged a violation of the ADA, Section 504, or IDEA, a violation of these statutes may not be enforced through § 1983. Defendants rely on *Lollar*, 196 F.3d at 609, in which the Fifth Circuit addressed the plaintiff's argument that she could recover damages and attorneys fees for a violation of Section 504 through § 1983. It began its discussion by noting the general rule of statutory construction that a statute which affords a remedy for a specific wrong, and which is comprehensive enough to embrace subjects that may fall within the ambit of a general statute, should prevail over the general statute as a vehicle for enforcing those specific statutory rights. *Id.* at 609 (citations omitted). "Furthermore, a comprehensive remedial scheme for the enforcement of a statutory right creates a presumption that Congress intended to foreclose resort to more general remedial schemes to vindicate that right." *Id.* The Fifth Circuit then observed that, with respect to Section 504, Congress had created a specific comprehensive internal enforcement mechanism to protect the rights of the disabled who are employed by recipients of federal funds. *Id.* at 609-610 (citing 29 U.S.C. §

794(a)).  The Court concluded that, because Congress had provided comprehensive enforcement

and remedial measures within the Rehabilitation Act, § 1983 could not be used as an alternative

method of enforcement for those rights.  *Id*. at 609-610.  In so holding, the Fifth Circuit relied on

the Eleventh Circuit's decision in *Holbrook v. City of Alpharetta*, 112 F.3d 1522 (11th Cir.

1997), in which the Eleventh Circuit held that the ADA provided a similar comprehensive

remedial framework to that found in the Rehabilitation Act. The plaintiffs could not, therefore,

maintain a § 1983 claim in lieu of or in addition to an ADA claim if the only alleged deprivation

is of the employee's rights created by the ADA.  *Lollar*, 196 F.3d at 610 (citing *Holbrook*, 112

F.3d at 1531).  The Third Circuit recently held that dyslexic former student, who alleged that a

school district had failed to conduct an adequate investigation and provided no relief despite

ample evidence of his disability, could not pursue his Section 504 claims through the § 1983

vehicle.  *A.W. v. Jersey City Public Schools*, 496 F.3d at 803-806.

The Court now turns to Defendants' argument that Plaintiffs' IDEA claims cannot be

asserted through § 1983.  In *Smith v. Robinson*, 468 U.S. 992 (1984), the Supreme Court held

that the EAHCA contained a comprehensive enforcement scheme that provided through which

disabled children could assert violations of their rights under the statute. *Smith*, 468 U.S. at

1013.  The court's decision foreclosed the possibility that a disabled child could pursue his

EAHCA claims though § 1983.  *Id*. at 1004-1005.  Congress then amended the EAHCA, adding

a new provision which states that: "Nothing in this title shall be construed to restrict or limit the

rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation

Act of 1973, or other Federal statutes protecting the rights of handicapped children and youth."

§ 1415(f).  As Defendants point out, since the addition of § 1415(f) to the statute, the Fifth

Circuit has never addressed the issue of whether IDEA violations may be the basis of a § 1983 claim; other circuits are split on this issue.

The recent trend in other circuits is that § 1415(f) did not abrogate *Smith*'s holding that EAHCA, recodified as IDEA, violations could not support § 1983 claims. *See A.W. v. Jersey City Public Schools*, 486 F.3d at 795-796; *Sellers*, 141 F.3d at 529; *Padilla v. School Dist. No. 1*, 233 F.3d 1268, 1273 (10th Cir. 2000). In *Sellers*, the Fourth Circuit rejected the plaintiffs' argument that the amendment to the EAHCA allowed them to pursue their IDEA violations through § 1983 because IDEA provided a comprehensive remedial scheme for violations of its own requirements. *Sellers*, 141 F.3d at 529. "Nothing in section 1415(f) overrules the Court's decision in *Smith* to the extent it held that Congress intended IDEA to provide the sole remedies for violations of that same statute. If Congress meant to overrule *Smith* on this significant point, it certainly chose an oblique and essentially implausible means of doing so." *Id.* The Fourth Circuit found support for its reasoning in the different standards of liability applicable to constitutional equal protection claims and to statutory IDEA claims. *Id.* at 530. The failure to provide a child with a free appropriate public education constitutes a violation of IDEA; in contrast, to prevail on a constitutional claim, Plaintiffs must show purposeful discrimination, and that a school board's decision would not satisfy rational basis review. *Sellers*, 141 F.3d at 530-531 (citing *Washington v. Davis*, 426 U.S. 229, 239 (1976)). "Naturally school boards will be subject to liability for statutory IDEA violations much more frequently than for similarly pled constitutional claims. It is easy therefore to understand why Congress intended to subject school boards to the more expansive remedies available under section 1983 for their more culpable constitutional failures, yet not for breaches of IDEA. Section 1415(f) sensibly retains IDEA's comprehensive scheme as the remedy for violations of that Act." *Id.* at 531.

The Third Circuit recently reconsidered its previous holding that a plaintiff could base her § 1983 claim on violations of IDEA. *See A.W. v. Jersey City Public School*, 486 F.3d at 795. The Third Circuit abandoned its previous position, based on the Fourth and Tenth Circuit's different interpretation of § 1415(f). More importantly, it was influenced by the Supreme Court's decision in *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 125 (2005). In *Abrams*, the Supreme Court considered whether Congress intended to allow plaintiffs to seek relief for violations of the Telecommunications Act of 1996 through § 1983 claims. The Court began with the requirement that, in order to sustain a § 1983 action for the violation of a statutory right, a plaintiffs must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which she belongs. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). "[A] defendant may defeat this presumption by demonstrating that Congress did not intend that remedy for a newly created right." *Abrams*, 544 U.S. at 120. "Evidence of such congressional intent may be found directly in the statute's creating the right, or inferred from the statute's creations of a 'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" *Id.* (quoting *Blessing v. Freestone*, 520 U.S. 329, 341 (1997)). The Supreme Court found that Congress's inclusion of private remedial provisions in a statute was ordinarily an indication that Congress did not intend "to leave open a more expansive remedy under § 1983." *Id.* at 121. The Supreme Court added, however, this ordinary inference can be overcome by "textual indication, express or implicit, that the remedy is to complement, rather than supplant, § 1983." *Id.* at 122.

Based on this reasoning, the Third Circuit concluded that the inclusion of a private remedy for IDEA violations gives rise to a presumption that this remedy is to be exclusive, and that the presumption may be defeated by a "textual" showing that the remedy was not intended to

be comprehensive. *A.W. v. Jersey City Public Schools*, 486 F.3d at 802.  Applying this reasoning

to IDEA, the Third Circuit found that the provisions of IDEA create an express, private means of

redress; therefore a § 1983 action is not available to remedy violations of IDEA-created rights,

absent some "textual implication, express or implicit, that the [statutory remedy] is to

complement, rather than supplant, § 1983." *Id*. at 802 (quoting *Abrams*, 544 U.S. at 122).

Finding that § 1415(f) did not constitute such a textual implication, the Third Circuit concluded

that the plaintiffs could not pursue a § 1983 claim based on violations of IDEA.

Plaintiffs, in response to Defendants' argument that they cannot base a § 1983 claim on

violations of these statutes, cite several district court opinions and one circuit court opinion for

the proposition that damages are available under § 1983 for violations of IDEA, Section 504 and

ADA.  The circuit court opinion is *W.B. v. Matula*, 67 F.3d 484 (3d Cir. 1995), which, as

discussed above, the Third Circuit overruled in *A.W. v. Jersey City Public School*.  Plaintiffs then

cite several opinions from district courts in Texas and Mississippi, all but two of which were

decided before *A.W. v. Jersey City Public School*.  In *Oliver v. Dallas Indep. Sch. Dist*, the Court

did not explicitly hold that the plaintiffs could assert at § 1983 claim based on a violation of

IDEA; rather, it held that, since the plaintiffs had failed to exhaust its IDEA claims, it could not

assert them under § 1983.  2004 WL 1800878 at *2 n. 3.  In a footnote, the district court cited

First and Second Circuit decisions that allowed plaintiffs to seek damages under § 1983 for

IDEA violations. *See  Polera v. Bd. of Educ. of the Newburgh Enlarged City Sch. Dist*., 288

F.3d 478, 483 n.5 (2d Cir. 2002); *Frazier v. Fairhaven Sch. Cmte*., 276 F.3d 52, 57 (1st Cir.

2002).  Both were decided before *Abrams* and *A.W. v. Jersey City Public Schools*, which, as

discussed above, this Court finds persuasive.  In *Newsome v. Mississippi High School Activities

Association*, No. 1:07-CV-293-D-D, 2008 U.S. Dist. LEXIS 53094 (N.D.Miss. July 8, 2008),

and *Marc V*, 455 F. Supp. 2d at 591-597, the district courts similarly held that the plaintiffs had

failed to exhaust their IDEA claims.  In *Hills v. Lamar County Sch. Dist., et al.*, 2008 U.S. Dist.

LEXIS 11062 at *3,[4] *Ron J. v. McKinney Indp. Sch. Dist., et al.*, No. 4:05-cv-257, 2006 U.S.

Dist. LEXIS 76455 (E.D.Tex. Oct. 11, 2006), and *Eddins v. Excelsior Independent School

District*, 88 F. Supp. 2d 695 (E.D.Tex. 2000),[5] the district courts did not address whether a

plaintiff could assert a § 1983 claim based on an IDEA violation.

### b) Constitutional Violation Claims

Plaintiffs also advance a § 1983 claim against Defendants for their alleged violations of

D.A.'s rights under the United States and Texas constitutions.[6]  Defendants contend that

Plaintiffs have failed to demonstrate a constitutional violation; therefore, their § 1983 claim must

be denied as a matter of law. In their Complaint, Plaintiffs plead that Colvin and Martinez, acting

in their official capacity and under color of law and pursuant to HISD policy, practice, and

custom, were callously and deliberately indifferent to their duties to provided adequate training

to instructional personnel and to properly supervise the instruction and training provided to D.A.

to ensure that he was safe from harm by Crespo's faculty and staff.  (Pls. Compl. ¶¶ 44 and 46.)

Defendants assume that this claim is based on Plaintiffs' allegations that Defendants used

"inappropriate punishment" and a "discriminatory slur" which caused L.A. to be "fearful for

[D.A.]'s physical and mental well-being."  (Pls. Compl. ¶ 8.)  Defendants, citing *Flores v. Sch.

Bd. of DeSoto Parish*, analogize these allegations to a Fourteenth Amendment claim.  116 Fed.

---

[4] The district court in *Hills v. Lamar County Schools* recognized that *A.W. v. Jersey City* had overruled the Third Circuit's prior holding in *W.B v. Matula*. 2008 WL 427775 at *4.

[5] *Marc V.* cited two cases from the Third and Fourth Circuit for the proposition that Plaintiffs can assert § 1983 claims based on IDEA violations.  *See Robinson v. Pinderhughes*, 810 F.2d 1270, 1272-75 (4th Cir. 1987); *Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 279 (3d Cir. 1996).  *Jeremy H.* was expressly overruled by *A.W. v. Jersey City*.  In *Robinson*, the Fourth Circuit recognized a narrow exception to *Smith*, holding that plaintiffs may assert a § 1983 claim when a school district refuses to abide by the hearing officer's ruling.

[6] As Defendants note, because § 1983 claims can only be premised on violations of federal statutory or constitutional law, alleged violations of the Texas constitution cannot be asserted through § 1983.  *Handley v. City of Seagoville*, 798 F.Supp. 1267, 1271 (N.D.Tex. 1992).

Appx. 504, 510 (5th Cir. 2004).  In their Response, Plaintiffs do not specify whether they are alleging a violation of the Fourteenth Amendment or some other provision of the Constitution; however, they mention the Fourteenth Amendment in the sub-heading for their § 1983 claims.

The Fourteenth Amendment provides that "no State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. In response to Plaintiffs' claim that Defendants were "inappropriately punishing" D.A., Defendants cite *Moore v. Willis Indep. Sch. Dist.*, in which the Fifth Circuit held that "as long as the state provides an adequate remedy, a public school student cannot state a claim for denial of substantive due process through excessive corporal punishment whether it be against the school system, administrators, or the employee who is alleged to have inflicted the damage."  233 F.3d 871, 874 (5th Cir. 2000) (citing *Fee v. Herndon*, 900 F.2d 804 (5th Cir. 1990) *cert. denied*, 498 U.S. 908 (1999)).  Defendants conclude that, because Texas provides such a remedy, Plaintiffs' allegations of "inappropriate punishment" do not create an independent federal cause of action for violation of Plaintiffs' substantive due process rights.  Defendants further argue that Martinez's alleged comment that D.A. was "a lazy monkey" was not a violation of a constitutionally protected liberty "because (assuming, without deciding, that one remark can amount to stigma) 'the infliction of a stigma ... without more, does not infringe upon a protected liberty interest.'" *K.U. v. Alvin Independent School Dist.*, 166 F.3d at *4 (quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1993)).

Plaintiffs do not directly address Defendants' arguments in their Response.  Instead, Plaintiffs cite to portions of the administrative record in which teachers stated their belief that younger students cannot be tested for special education, and portions of Defendants' briefs and

the administrative hearing in which counsel for Defendants recognized that HISD has had problems with over-identification of African-American males for special education.[7]  Plaintiffs seem to be arguing that HISD violated their constitutional rights by refusing to test D.A. because of his race and age; Defendants point out that "such a policy, if it existed, would clearly violate the IDEA, and consequently, was highly relevant to the Hearing Officer's decision."  Defendants contend that, after hearing the evidence, the hearing office did not determine that HISD had discriminatory testing but rather that the pre-referral interventions were "well-intended."  Defendants also argue that, because Plaintiffs did not allege a claim for race discrimination in their Complaint, the claim cannot be presented in their Response.  *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990) ("[A] claim that is not raised in the Complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").  The Court agrees that Plaintiffs did not advance a race discrimination claim in their Complaint and, besides attorney argument, have not identified evidence of race discrimination in the record.

Defendants assume that Plaintiffs are advancing an equal protection claim based on age discrimination, although Plaintiffs have not stated as much in either their Complaint or their Response.  To the extent this is true, age is not a suspect classification under the Equal Protection Clause; therefore, HISD's alleged policy of discrimination would be subject to rational basis review.  *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991).  Under rational-basis scrutiny, the regulation is "accorded a strong presumption of validity" and "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a

---

[7] Plaintiffs also request that they be allowed to conduct discovery to support their § 1983 claims.  Federal Rule of Civil Procedure 56 (f) allows a party opposing summary judgment to show, by affidavit, that for specified reasons it cannot present facts essential to justify its opposition.  In the instant case, Plaintiffs have not submitted such an affidavit or described in their Response what sort of evidence they seek to uncover through additional discovery.  Consequently Plaintiffs' request, not properly asserted as a 56(f) motion, will not be granted.

rational basis for the classification." *Cornerstone Christian Schools v. University Interscholastic League*, 563 F.3d 127, 139 (5th Cir. 2009) (citing *Heller v. Doe*, 509 U.S. 312, 319-20 (1993) (internal quotation and citation marks omitted)).  In the instant case, Defendants have argued that there is no HISD policy prohibiting young children from being tested for special education.  To the extent there is such a policy, Defendants argue that it is sometimes best to allow young children time to develop before performing special education testing. The Court considers this to be a rational basis for Defendants' alleged policy of denying young children special education testing for a short time in their initial years in the education system.

## III.    CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED**.


**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the _14th_ day of August, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE


**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**